[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13656
Non-Argument Calendar

_____

Agency No. A200-240-343

JUANA MARIA PORTILLO-BAUTISTA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 6, 2020)

Before BRANCH, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Juana Portillo-Bautista seeks review of the Board of Immigration Appeals' ("BIA") final order affirming the immigration judge's ("IJ") denial of her application for asylum. First, she argues that the BIA should have dismissed the removal proceedings because her putative notice to appear ("NTA") violated the claims processing rule set out in 8 C.F.R. § 1003.14. Second, she argues that the immigration judge and BIA erred in making an adverse credibility determination and denying her asylum application. After careful review, we dismiss in part and deny in part her petition.

## I. Background

Portillo-Bautista, a native and citizen of El Salvador, entered the United States without inspection on or about July 30, 2011. On August 1, 2011, the Department of Homeland Security served her with a NTA, which charged that she was removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), for being an alien present in the United States without being admitted or paroled. The NTA ordered her to appear "on a date to be set at a time to be set." Subsequently, she received a notice of hearing that provided the day and time of her hearing. After transferring the case from California to Florida, Portillo-Bautista received another notice of hearing providing an updated day and time for her individual hearing.

In March 2012, Portillo-Bautista filed her application for asylum, withholding of removal, and withholding of removal under the Convention Against

Torture ("CAT") based on her political opinion, membership in a particular social group, and nationality.[1]

At a hearing in November 2013, Portillo-Bautista presented evidence that she came to the U.S. because she feared harm from her stepfather. She said that she experienced problems with gang members because they wanted her to join and become their girlfriend. She also testified that the police came by the watermelon stand where she worked to question her about her brother, and that, although she told the police nothing, she heard from her brother and a family friend that the gang thought she was an informer and wanted to kill her. The IJ issued an oral decision which found that Portillo-Bautista did not establish that she was eligible for asylum or withholding of removal. Portillo-Bautista appealed to the BIA, arguing, in relevant part, that the IJ erred in denying her application for asylum, withholding of removal, and withholding of removal under CAT. The BIA remanded the case for further factual development based on the limited time afforded to Portillo-Bautista to present evidence and testimony, particularly related to her proposed social groups and her eligibility for CAT protection.

---

[1] Portillo-Bautista attached a sworn personal statement to her application, along with other materials, which the IJ relied on in assessing her credibility. She also attached a police report from El Salvador from when she had gone to police about being threatened by a gang as a ploy to get her to join.

At her second hearing before the IJ in August 2017, Portillo-Bautista testified to the following. When she was 15, her mother left her with her stepfather, and he abused her almost every day. Ultimately, she left her stepfather's house and went to live with her grandmother. She had a permanent scar from her stepfather's abuse on her right ankle. She testified that her stepfather was killed after she fled to the United States, though she did not know by whom. She stated that she specifically feared the Gang 18 in El Salvador and whoever killed her stepfather.

Portillo-Bautista presented testimony that she began to have problems with Gang 18 when she was 18 and living with her grandmother. Initially, members of the gang had asked her to join the gang and be their girlfriend. She refused. Later that year, the police came by, asking if she knew where the gang members would be. The police spoke to her because her brother was in the gang, but she was not aware that her brother was in the gang and did not have any information for them. The police came by more than six times. Her uncle told her to be careful with the gangs, and her friend Roberto Erazo called and told her that he heard the gang was going to kill her. Rafael, one of her brother's friends, also told Portillo-Bautista that the gang was trying to kill her because they thought she would tell the police about their whereabouts. Two days after Rafael warned her, he was killed.

4

One day a group of young men started to approach her on bicycles, saying that they were coming to kill her, but the police arrived, and they did not do anything to her. When asked why this incident was not recorded in any of her sworn statements, Portillo-Bautista stated that she never talked about the bicycle incident because she was "focusing on other things" and that she "overlooked it." She stated that the police officer told her that the men on bicycles were coming to kill her. The bicycle incident was the last time she interacted with the police.

Portillo-Bautista testified that she feared being tortured if she returned to El Salvador because the person that killed her stepfather knows he has children (herself) and because her brother was a member of the gang. She also feared that, if she returned, the gang would kill her and harm her children. On cross examination, Portillo-Bautista admitted she had not included some of the incidents mentioned during her testimony, including the one where the gang members approached her on bicycles, in her initial sworn statement to the Border Patrol.

The IJ issued a written decision. First, the IJ found Portillo-Bautista's testimony not credible and listed examples of what prompted this finding, including that: (1) her testimony was inconsistent between her November 2013 and August 2017 hearings as it related to how Gang 18 tried to recruit her, (2) her testimony was inconsistent with the record evidence because she testified that she feared harm if she returned to El Salvador but she stated at the border that she had

no fear of returning, (3) there were several material omissions between Portillo-Bautista's testimony and written statements—namely, her assertion that five members of the gang approached her on motorcycles, and (4) her testimony was generally vague. Further, the IJ found that Portillo-Bautista failed to provide sufficient corroborative evidence to support her claim because the police report was inconsistent with her testimony, and the other supporting evidence did not, in and of itself, support her claims that either her stepfather or the Gang 18 ever harmed her. Because the IJ found her testimony not credible, the IJ found that she failed to meet her burden of proof for relief under asylum, withholding, or CAT.[2]

Portillo-Bautista appealed to the BIA, arguing, in relevant part, that the IJ erred in finding that her testimony was not credible and in finding that she was not eligible for asylum. She argued that her inconsistent testimony was because she "lacks the intelligence level to give self-serving testimony," and that she was not

---

[2] The IJ made additional holdings in the alternative. The IJ held that, even if she were credible, Portillo-Bautista still did not qualify for asylum because her proposed social groups—Salvadorian female youth who have resisted gang activity and is subject to intimidation and young Salvadoran women who have been subject of sexual advances from gangs—were not cognizable because the groups are defined by the fact that its members have been subjected to harm, they are not sufficiently distinct, and the term "sexual advances" is too ambiguous and highly subjective. Further, the IJ found that her claim that she was persecuted on account of an imputed political opinion based on the gang's belief that she was a police informant is not cognizable because the IJ found no evidence to demonstrate that the gang attributed a political opinion to her. The IJ further held that even if it were to find that Portillo-Bautista belonged to a cognizable social group or that the gang imputed a political opinion to her, she still failed to establish that she was persecuted "on account of" either ground. Lastly, the IJ found that she did not have a well-founded fear of future persecution for the same reasons as above, and further because she failed to establish her fear of persecution on account of a protected ground—namely, that she fears future persecution on account of her familial connection.

given a chance to sufficiently clarify the inconsistencies. She maintained that she met all four prongs to establish that she was eligible for asylum. Portillo-Bautista also argued that her case should be remanded to allow consideration of a motion to terminate removal proceedings based on her defective NTA under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018).

The BIA adopted and affirmed the decision of the IJ. The BIA found that the IJ's adverse credibility finding was not clearly erroneous because the IJ gave specific, cogent reasons, "citing inconsistencies within [Portillo-Bautista's] testimony and between her testimony and documentary evidence." Further, the BIA found that, in the absence of credible testimony, she did not establish her eligibility for asylum because the evidence was not sufficient to meet her burdens of proof.[3] Additionally, the BIA declined to terminate her removal proceedings based on *Pereira* because she received a subsequent notice of hearing specifying the time, date, and place of her hearing and appeared at her hearing. Accordingly, the BIA dismissed the appeal. This petition for review followed.

## II. Standards of Review

On appeal from the BIA's decision, we review legal questions *de novo*. *Zhou Hua Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1307 (11th Cir. 2013). Factual

---

[3] Additionally, the BIA affirmed the IJ's findings in the alternative that, even if credible, Portillo-Bautista did not establish she qualified for asylum or other relief.

determinations are reviewed under the substantial evidence test, which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (*en banc*). We "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id*. at 1027 (quotation marks omitted). To reverse factual findings, we must find that the record not only supports a different conclusion but compels it. *Id*.

We "review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion. Insofar as the Board adopts the IJ's reasoning, we will review the IJ's decision as well." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA expressly adopted the IJ's opinion. Thus, we will review both decisions to that extent. *See id*.

## III. Discussion

### A. The Deficient Notice to Appear Did Not Deprive the Immigration Judge of Jurisdiction

Portillo-Bautista argues that the BIA should have dismissed the entire proceedings against her because the IJ lacked jurisdiction on account of the

defective notice to appear she received which omitted the date and time of her hearing.  We disagree.[4]

Regarding the initiation of removal proceedings, the alien must be served with an NTA specifying "[t]he time and place at which the proceedings will be held."  8 U.S.C. § 1229(a)(1)(G)(i).  In *Pereira*, the Supreme Court concluded that a putative NTA that did not specify either the time or place of the removal proceedings was "not a notice to appear under section 1229(a)" and did not trigger the stop-time rule for cancellation of removal, an administrative procedure not at issue here.  *Pereira*, 138 S. Ct. at 2110, 2113–14 (quotation marks omitted).

We have since addressed *Pereira*'s impact on jurisdiction.  In *Perez-Sanchez* we addressed a petitioner's claim under *Pereira* that the IJ "never had jurisdiction over his removal case" because the NTA "did not include either the time or date of his removal hearing."  *Perez-Sanchez v. U.S. Attorney Gen.*, 935 F.3d 1148, 1150 (11th Cir. 2019).  We determined that the NTA was "unquestionably" deficient

---

[4]  The government contends that we lack jurisdiction to decide this argument.  We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted all administrative remedies related to that claim.  *See* 8 U.S.C.A. § 1252 (West); *see also Amaya Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).  "[W]hen a petitioner has neglected to assert an error before the BIA that he later attempts to raise before [our Court], the petitioner has failed to exhaust his administrative remedies."  *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 800 (11th Cir. 2016).  Here, however, Portillo-Bautista did raise the defective notice to appear jurisdictional issue before the BIA.  Thus, we have jurisdiction to address that argument.  We also note that the BIA addressed the argument on the merits, rather than citing a failure to exhaust.  *See Bing Quan Lin v. U.S. Attorney Gen.*, 881 F.3d 860, 870–71 (11th Cir. 2018) ("Generally we have jurisdiction to consider appeals of the grounds upon which the BIA based its decision.").  Further, we note that the government did not attempt to argue exhaustion below.

9

under § 1229(a) for failing to specify the time and date of the removal hearing. *Id*. at 1153. However, we determined that this failure did not deprive the agency of jurisdiction over the removal proceedings because the statutory "time-and-place requirement," like 8 C.F.R. § 1003.14, did not "create a jurisdictional rule," but was instead a "claim-processing rule." *Id*. at 1154–55. In coming to that conclusion, we reasoned that "[p]rinciples of administrative law dictate that an agency cannot define its own authority to hear cases; only Congress can." *Id*. at 1155. Thus, Portillo-Bautista's argument that a deficient NTA deprives an IJ of jurisdiction is squarely foreclosed by binding precedent, and we deny her petition based on this claim.

To the extent Portillo-Bautista attempts to argue that the violation of the claim-processing rule was a deprivation of due process, this claim was not presented to the BIA. Therefore, it was not exhausted, and we lack jurisdiction. *See Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 868 (11th Cir. 2018) (applying exhaustion rule to procedural due process claim). And to the extent Portillo-Bautista argues that the case should be remanded despite her failure to exhaust the claims processing due process argument, our case law allows for no such exception.[5] *See Jeune v. U.S. Att'y. Gen*., 810 F.3d 792, 800 (11th Cir. 2016)

---

[5] Even the case that Portillo-Bautista relies on to argue that we should remand because of this new claim processing argument recognizes that this same argument can be waived: "Applying that analysis to the situation before us, we see a statute (8 U.S.C. § 1229(a)(1)(G)(i))

10

("Petitioner never raised before the BIA the discrete arguments concerning the past persecution claim that he now makes to us. Consequently, he failed to exhaust this claim."); *Perez-Sanchez*, 935 F.3d at 1157 (declining to remand the case to the BIA where claim processing argument was not exhausted).  Even if we were to find that the NTA requirements are a "mandatory" claim processing rule, the petitioner would still be unable to raise the argument now: "[u]nlike jurisdictional rules, mandatory claim-processing rules may be forfeited." *Manrique v. United States*, 137 S. Ct. 1266, 1272 (2017).

Therefore, we dismiss for want of jurisdiction Portillo-Bautista's claims regarding the mandatory claims processing violation of the NTA.

B. Portillo-Bautista Cannot Demonstrate Eligibility for Asylum

To be eligible for asylum, an applicant must present "specific and credible" evidence that demonstrates either past persecution or a well-founded fear of future persecution on account of a protected ground.  *Sanchez Jimenez v. U.S. Att'y. Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007); 8 U.S.C. § 1158(b)(1).  Because of the "credible evidence" requirement, "[a]n adverse credibility determination coupled

---

that . . . simply sets out the information that must be included in a Notice to Appear. . . . It simply means that an aggrieved party can forfeit any objection she has by failing to raise it at the right time." *Ortiz-Santiago v. Barr*, 924 F.3d 956, 963 (7th Cir. 2019).  Although the Seventh Circuit recognized that *Pereira* represented a significant change in the law, it declined to excuse the petitioner from forfeiture: "Relief will be available for those who make timely objections, as well as those whose timing is excusable and who can show prejudice." *Ortiz-Santiago*, 924 F.3d at 965.

with a lack of corroborating evidence for a claim of persecution means that the applicant's claim fails." *Lyashchynska v. U.S. Att'y. Gen.*, 676 F.3d 962, 967 (11th Cir. 2012). The burden is on the applicant to prove credibility. *Id.*

Here, the IJ made an adverse credibility determination, which the BIA adopted. On appeal, we must give deference to a credibility determination by the IJ, because it is a fact-finding determination that is subject to substantial evidence review. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006). "This test requires us to 'view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision.'" *Tang v. U.S. Atty. Gen.*, 578 F.3d 1270, 1276 (11th Cir. 2009) (quoting *Adefemi,* 386 F.3d at 1029). "Under this highly deferential standard of review, the IJ's decision can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." *Sepulveda v. U.S. Atty. Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005); *see also Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) ("We have repeatedly emphasized that the test is highly deferential."). Once the IJ makes an adverse credibility finding, the burden is on the applicant to demonstrate that the decision was not supported by "specific, cogent reasons" or was not based on substantial evidence. *Ruiz*, 440 F.3d at 1255.

12

Here, we find there was substantial evidence to support the IJ's adverse credibility determination, and that the IJ had "specific, cogent reasons" in reaching that conclusion.  The IJ may base a credibility determination

> on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).  We have previously held that inconsistencies within testimony, as well as between testimony and external evidence, are sufficient justifications for an adverse credibility finding.  *See Chen v. U.S. Atty. Gen.*, 463 F.3d 1228, 1232 (11th Cir. 2006); *Mohammed v. U.S. Atty. Gen.,* 547 F.3d 1340, 1345–46 (11th Cir. 2008) (failure to mention incident of past persecution in either asylum application or credible fear interview was probative to credibility determination).  The IJ's adverse credibility finding is supported by substantial evidence and specific, cogent, and consistent reasons—namely, the omission of the bicycle incident from Portillo-Bautista's written statements and her November 2013 testimony, the inconsistencies between her November 2013 and August 2017 testimony as it related to how the gang tried to recruit her, the inconsistency in her statements to the Border Patrol and her testimony about whether she feared

13

returning to El Salvador, and the inconsistencies in her statements and the record evidence, *i.e.*, conflicting information contained in the police report and a supporting letter from a family friend, concerning where she was living before coming to the United States.  These inconsistencies and omissions constitute both substantial evidence and specific, cogent reasons to support the adverse credibility finding.  *See Ruiz*, 440 F.3d at 1255.  Further, Portillo-Bautista's explanations regarding these omissions and discrepancies do not compel a finding that her testimony was fully credible.  *Chen*, 463 F.3d at 1233.

An adverse credibility determination alone may be sufficient to support the denial of an asylum application, though it does not alleviate the IJ's duty to consider other evidence produced by the applicant.  *Ruiz*, 440 F.3d at 1255.  But a "denial of asylum relief can be supported solely by an adverse credibility determination" if the applicant "fails to produce corroborating evidence."  *Tang*, 578 F.3d at 1276–77.  Here, the IJ looked at the other evidence presented by Portillo-Bautista, which consisted of country reports and affidavits not based on personal knowledge.  These documents are not sufficient to corroborate testimony deemed unreliable or independently establish a basis for asylum.

14

For the foregoing reasons, we affirm the BIA's decision that Portillo-Bautista cannot establish her eligibility for asylum in light of the adverse credibility ruling against her. [6]

**PETITION DISMISSED IN PART, DENIED IN PART.**

---

[6] Because we hold that Portillo-Bautista cannot meet the standard for asylum, she necessarily cannot meet the standard for withholding of removal: "Where 'an applicant is unable to meet the "well-founded fear" standard for asylum, he is generally precluded from qualifying for either asylum or withholding of deportation.'" *Najjar*, 257 F.3d at 1292–93 (quoting *Nkacoang v. INS*, 83 F.3d 353, 355 (11th Cir. 1996)).  The same is true for CAT eligibility. *Id.* at 1303.